# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Heather D. HARDY
### Maritime Enforcement Specialist Third Class (E-4), U.S. Coast Guard

**CGCMS 24906**
**Docket No. 1392**

**6 May 2015**

Special Court-Martial convened by Commander, Coast Guard Atlantic Area.  Tried at Miami, Florida, on 15 October and 05 November 2013.

| | |
|---|---|
| Military Judge: | CDR Eric D. Masson, USCG |
| Trial Counsel: | LT Nicholas G. Smith, USCGR |
| Assistant Trial Counsel: | LT Jeremy A. Weiss, USCG |
| Military Defense Counsel: | LT Timothy C. Ceder, JAGC, USN |
| Assistant Defense Counsel: | LT Jennifer Buyske, JAGC, USN |
| Civilian Defense Counsel: | Mr. David P. Rowe |
| | Mr. David J. Brown |
| Appellate Defense Counsel: | LCDR LaCresha A. Getter, USCG |
| Appellate Government Counsel: | LT Daniel Velez, USCGR |

### BEFORE
### McCLELLAND, HAVRANEK & KOVAC
Appellate Military Judges

Per curiam:

Appellant was tried by special court-martial, military judge alone.  Pursuant to her pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of wrongful use of marijuana, one specification of wrongful use of cocaine, and one specification of wrongful distribution of marijuana, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ).  The military judge sentenced Appellant to confinement for eight months, forfeiture of $1,010 per month for eight months, reduction to E-1, and a bad-conduct discharge.  The Convening Authority approved the sentence, and suspended confinement in excess of six months, in accordance with the pretrial agreement.

Before this court, Appellant has assigned as error that unlawful command influence prevented her from being administratively discharged, from negotiating a favorable pretrial agreement, and from receiving a fair sentence. We discuss the issue briefly and affirm.

Appellant complains that the Convening Authority prevented her from negotiating a favorable pretrial agreement. She points out that the Convening Authority chose to dispose of the charges at special court-martial despite extenuating circumstances of abuse. The record reveals that her boyfriend had abused her, influencing her to commit the offenses of which she was convicted. (*See*, *e.g.*, Prosecution Ex. 2.) She asserts that she "was unable to negotiate a favorable pretrial agreement due to the pervasive influence of the convening authority who sought to make an example of her."[1] (Brief at 5.)

Since the convening authority is a party to a pretrial agreement, his or her pervasive influence on the negotiating process is not unlawful command influence, but proper participation. Making an example of an accused, without more, is not an improper consideration, in our view. Appellant has not identified any specific improper consideration or indicator, reflected in the record or otherwise, that would constitute an initial showing of unlawful command influence or otherwise require further consideration of her complaint. Beyond that, we have no reason to second-guess the Convening Authority's choice of forum, a special court-martial, for the charge and specifications found guilty in this case.

Appellant also asserts that comments made by the Commanding Officer prevented her from receiving a fair sentencing hearing. Specifically, she asserts that she "was prejudiced by the commanding officers of MSST Miami and Base Miami Beach. The command structure reinforced negative perceptions of ME3 Hardy by not addressing the rampant rumors. The command did nothing to correct the rumors after the Commanding Officer made the comments, further giving potential witnesses in this case the impression that ME3 Hardy was guilty of the charged crimes." (Brief at 5-6.)

---

[1] It is not evident from the record how she came to the conclusion that the Convening Authority sought to make an example of her.

According to the executive officer (XO) of MSST Miami, Appellant's unit, the command was informed of an investigation concerning allegations that Appellant had participated in trafficking and potential use of narcotics. (R. at 9438-41.[2]) After this report, initially Appellant was "treated as normal," deploying with other members of the unit and continuing to serve in her primary roles. (R. at 9447-85, 9507-13.) Later, Appellant was interviewed by investigators and admitted using and distributing drugs, after which she was administratively assigned to Base Miami Beach. (R. at 9524-28, 9560-61.) The decision to administratively assign her elsewhere was made because it was impracticable to retain her at the unit yet separate her from operational matters for which her drug involvement was evidently considered to make her unsuitable, particularly without revealing information to other crew members before the investigation was complete. (R. at 9530-59.)

Further according to the XO, once Appellant was relocated, the Commanding Officer (CO) of MSST Miami announced at an all-hands meeting that there was an ongoing situation and Appellant was not going to be working out of the MSST facility. (R. at 9884-9907.) The XO denied that the CO used the word misconduct. (R. at 9894-9903.) She testified that she was aware of rumors at the command that drugs were involved, and that she did not take any steps to address the rumors. (R. at 9933-37, 9956-73.)

The XO also testified that she communicated with the Base Miami Beach command master chief and Base deputy to arrange for Appellant's administrative assignment to the Base, and in replying to the XO's email, the Base deputy copied a first class petty officer (whom Appellant says was one of her new supervisors). (R. at 10251-64.) That email contained the information that Appellant was involved with drugs. (R. at 10265-67.) The XO denied that she had said Appellant "couldn't be trusted" or that Appellant was "in trouble." (R. at 10268-72.)

The evidence indicates that before trial, derogatory information was revealed to a person who may or may not have needed to know the information, and rumors were allowed to circulate among personnel of the command. Specifically, the information and rumors were to the effect

---

[2] The transcript has line numbers, not page numbers.

that Appellant was involved with drugs. There is no evidence to indicate that the commands actively implied that Appellant was guilty, nor is there any suggestion that the commands discouraged potential witnesses from testifying. We see no improper, much less unlawful, command influence here. Even if the commands' actions were questionable, they were harmless as to the merits of the case, given that Appellant pleaded guilty. After she pleaded guilty, Appellant's sentencing witnesses included two persons from MSST Miami and one from Base Miami Beach. There is no evidence that there was any other potential witness who declined to testify, and Appellant has not identified any other potential witness who might have been chilled. Accordingly, we conclude that Appellant suffered no prejudice.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.



For the Court,

Shelia R. O'Reilly
Clerk of the Court